IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

PHILIPPE GUARINO,                    :
                                     :
                                     :
        PETITIONER,                  :        Case No.   C7-0046(SDW)
                                     :
v.                                   :
                                     :
JOAN GUARINO,                        :
                                     :
        RESPONDENT.          :
------------------------------------ :

**VERIFIED PETITION FOR RETURN OF CHILDREN TO PETITIONER AND
PETITION FOR IMMEDIATE ISSUANCE OF SHOW CAUSE ORDER TO
RESPONDENT**

**The Convention on the Civil Aspects of International Child Abduction, done at
The Hague On October 25, 1980; International Child Abduction Remedies Act,
42 U.S.C. § 11601 *et seq.***

## I. Preamble

1. This Petition is brought pursuant to The Convention on the Civil Aspects of

International Child Abduction, done at the Hague on October 25, 1980[1] (hereinafter the

"Hague Convention" or "Convention"), and the International Child Abduction Remedies Act[2]

(hereinafter "ICARA"). The Convention came into effect in the United States of America on

July 1, 1988 and was also ratified between the United States of America and France on July 1,

1988.

---

[1] T.I.A.S. No. 11,670, at 1, 22514 U.N.T.S. at 98, reprinted in 51 Fed. Reg. 10493 (1986), a copy of which is
attached as Exhibit A.

[2] 42 U.S.C. § 11601 *et seq* (1995). ICARA was created to deal with the sudden abduction of children and to
allow a petitioner to assert his or her rights in exigent circumstances. *See Distler v. Distler*, 26 F. Supp.2d 723,
727 (D.N.J. 1998).

2.  The objects of the Convention are as follows:  (1) to secure the immediate return of a child wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.  Convention, art.1.[3]

## II.  Jurisdiction

3.  This Court has jurisdiction pursuant to 42 U.S.C. § 11603 (1995)[4] and because this case involves the removal and retention of children under the age of sixteen from their habitual residence of France to the United States of America.[5]

## III.  Status of Petitioner and Children

4.  The Petitioner, Philippe Guarino and the Respondent, Joan Guarino are the parents of Alexandre Francois Guarino and Gabriella Holly Guarino (the "Children") and were married on February 6, 1988 in New York, New York.  Since their marriage they have maintained a home in common where Petitioner was carrying out his responsibilities toward the Children.  The family moved to France together in September 1997 and have lived together there ever since.  Petitioner and the Children are all French citizens.  *See* Exh. B.

5.  Alexandre will be twelve (12) years old on February 26, 2007.  A copy of his birth certificate is attached as Exhibit C.  Gabriella is three and one-half (3 ½) years old.  A copy of her birth certificate is attached as Exhibit D.  The Convention app[lies] to cases where a child

---

[3]  As has been stated by other courts addressing Hague cases, the Convention therefore authorizes a federal district court to determine the merits of the abduction claim but does not allow it to consider the merits of any underlying custody dispute. *Morris v. Morris*, 55 F. Supp.2d 1156, 1160 (D. Colo. 1999)(recognizing that "[p]ursuant to Article 19 of the Convention, [this Court has] no power to pass on the merits of custody;" *see also Currier v. Currier*, 845 F. Supp. 916 (D. N.H. 1994)(citing *Friedrich v. Friedrich*, 983 F.2d 1396, 1399 (6th Cir. 1993); *Meredith v. Meridith*, 759 F. Supp. 1432, 1434 (D. Ariz. 1991).  The court's role is not to make traditional custody decisions but to determine in what jurisdiction the child should be physically located so that the proper jurisdiction can make those custody decisions. *Loos v. Manuel*, 651 A.2d 1077 (N.J. Super. Ct. Ch. Div. 1994).

[4]  A court considering an ICARA petition has jurisdiction to decide the merits only of the wrongful removal claim, not of any underlying custody dispute. The Hague Convention is intended to restore the pre-abduction *status quo* and to deter parents from crossing borders in search of a more sympathetic court. *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998)(citations omitted).

[5]  *Toren v. Toren*, 191 F.3d 23 (1999).

under the age of sixteen (16) years has been removed from his or her habitual residence[6] in breach of rights of custody of a petitioner, which the petitioner has been exercising at the time of the wrongful removal[7] or wrongful retention[8] of the child.

      6. At the time of the wrongful removal and wrongful retention of Alexandre and Gabriella (as specifically set forth in Part IV below), Petitioner was actually exercising custody rights within the meaning of Articles Three and Five of the Convention,[9] in that he is the father of Alexandre and Gabriella and has exercised custody rights over his son and daughter since they were born. Furthermore, Alexandre and Gabriella were habitually resident in France within the meaning of Article 3 of the Convention since September 1997 until their wrongful removal and retention from France in December 2006.

---

[6] Courts in both the United States and foreign jurisdictions have defined habitual residence as "the place where [the child] has been physically present for an amount of time sufficient for acclimatization and which has a degree of settled purpose from the child's perspective." *Pesin v. Rodriguez*, 77 F. Supp.2d 1277, 1284 (S.D. Fl. 1999)(citations omitted), *aff'd, Pesin v. Rodriguez*, 244 F.3d 1250 (11th Cir. 2001); *Morris* at 1161 ("the law requires [the Court] to focus on the child in determining habitual residence"); *see also In re Robinson*, 938 F. Supp. 1339, 1341-42 (D. Colo. 1997). It is a state of being or state of mind. Habitual residence is the permanent physical residence of the child as distinguished from their legal residence or domicile. *In re Bates*, No. CA 122-89, High Court of Justice, Family Div., England, February 23, 1989; *Brook v. Willis*, 907 F. Supp. 57, 61 (S.D.N.Y. 1995); *Loos*, 651 A.2d at 1080 (stating that it is immaterial that the concept of habitual residence lacks precision); *see also T.B. v. J.B.*, 2000 WL 1881251, at *1 (Supreme Court of Judicture, England, December 19, 2000 (stating that it is important to remember that the Convention is concerned with the return of child to the country of their habitual residence and not with their return to any particular person).

[7] "Article 3 of the Hague Convention provides that the removal or retention of a child is wrongful where it violates the custody rights of another person that were actually being exercised at the time of the removal or retention or would have been exercised but for the removal or retention." *Lops, supra* at 935; "[t]he removal of a child from the country of his or her habitual residence is 'wrongful' under the Hague Convention if a person in that country is, or would otherwise be, exercising custody rights to the child under that country's law at the moment of removal." *Friedrich v. Friedrich*, 78 F.3d 1060, 1064 (6th Cir. 1996); *see Prevot v. Prevot*, 59 F.3d 556 (6th Cir. 1995); Convention, art. 3.

[8] "Wrongful retention" occurs when it is in breach of rights of custody attributed to a person under the law of the country in which the child was habitually resident immediately before the retention; and at the time of retention these rights were actually exercised, or would have been so exercised, but for the wrongful retention. Convention, art. 3; *Feder*, 63 F.3d at 225; *Wanninger v. Wanninger*, 850 F. Supp. 78, 80-81 (D. Mass. 1994).

[9] The issue of "custody" must be addressed under French law. *Pesin*, 77 F. Supp.2d at 1284; *see also Whallon v. Lynn*, 230 F.3d 450 (1st Cir. 2000); *Friedrich v. Friedrich*, 983 F.2d at 1402; *Ohlander v. Larson*, 114 F.3d 1531, 1541 (10th Cir. 1997)(stating that the Convention was meant, in part, to lend priority to the custody determination hailing from the child's state of habitual residence). Pursuant to Article 14 of the Convention, this Court "may take notice directly of the law of … the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law." *See also* Fed. R. Civ. P. 44.1.

7. Petitioner has requested the return of Alexandre and Gabriella to France pursuant to his Requests for Return, copies of which are attached hereto as Exhibit E.[10]  The Requests for Return have been filed with the United States Department of State and the National Center for Missing and Exploited Children, the Central Authority of the United States of America under the Convention.

8. Alexandre was born on February 26, 1995 and will be sixteen (16) years of age on February 26, 2011.  Gabriella was born on March 13, 2003 and will be sixteen (16) years of age on March 13, 2019.  At the time immediately before the wrongful removal and wrongful retention of Alexandre and Gabriella, the children habitually resided in France within the meaning of Article 3 of the Convention.  While in France, one would be hard-pressed to imagine two happier children.

9. Alexandre has resided habitually in France since the age of two (2).  He has continuously gone to French public schools (exclusively taught in French language) since the age of 3.

Alexandre is happy with his school and is doing very well scholastically; indeed, he recently made the honor roll, and Petitioner personally has met with all of his teachers and they are all pleased with his progress.

All of Alexandre's lifelong friends are in France. He is in the same class as his best friend, Brice Vivet, and they could not be closer friends.  They have vacationned together in France, they sleep over at each other's homes, and they spend much time together.  Another of his close, lifelong friends in France is Rocco Marciano.  Again, they have vacationned together in France, they sleep over at each other's homes, and they spend much time together.  Alexandre has numerous other friends in France such as Benjamin Sinah, Hugo Jacobino, and

---

[10] Given the urgency of this Hague Convention Petition, no authentication of any documents or information included with the Petition is required.  42 U.S.C. § 11605 (1995).

Florian Felix. He knows *nobody* in the United States except for the child of a neighbor of Respondent's parents that he sees once or twice a year for the last few years.

Alexandre's native language is French. He is just learning to read and write English in schoool.

Alexandre has for years been a member of a French soccer club, where he trains twice per week and usually has games on Saturdays. He has friends on the team.

Alexandre is in every way completely settled and integrated in France's life and culture.

10. Gabriella was born in France and has habitually resided in France since her birth. She began her first year of school in September, 2006. Although prior to her commencing school when she was in a pre-school she had some difficulty adapting to a collective, group environment, since beginning school in September she has been doing extremely well and has adapted to her public French school surroundings. Indeed, she likes school and looks forward to going to school.

11. At the time of Petitioner's request to the Central Authority of the United States of America, the Children had been wrongfully removed and retained in the Contracting State of the United States.

### IV. Wrongful Removal and Wrongful Retention of Children by Respondent

12. Petitioner has rights of custody under French law pursuant to Article 371-1 of the French Civil Code, a copy of which is attached hereto as Exhibit F. Article 371-1 of the French Civil Code entrusts both parents with the welfare, care and education of their children. Furthermore, Article 371-3 establishes that both parents must affirmatively consent to the children leaving the parental home. The removal of Alexandre and Gabriella is therefore in violation of the French Civil Code and is a wrongful removal and retention within the meaning of Articles 3 and 5 of the Convention. Petitioner only consented to leave France

5

with the Children for a 2-week vacation to visit Respondent's family. Since removing Alexandre and Gabriella, Respondent announced her intent to wrongfully retain the Children in the United States of America. As of January 2, 2007, Petitioner has had only minimal telephone contact with Alexandre and Gabriella, as controlled by the Respondent.

13.  On December 22, 2006, Petitioner and Respondent travelled to the United States with Alexandre and Gabriella, at Respondent's instigation, allegedly for a two (2) week vacation purportedly to be with Respondent's family for Christmas. Alexandre specifically was scheduled to return to France on January 6, 2007 with Petitioner so as to return to school on January 8, 2007. *See* copy of electronic plane ticket/itinerary attached hereto as Exhibit G. In fact, the return date for Alexandre pursuant to the ticket originally purchased by Respondent's family was January 16, 2007, but upon learning of the return date Petitioner immediately e-mailed Respondent's family to say that the date would have to be changed because school begins on January 8, 2007. *See* copy of e-mail, attached hereto as Exhibit H. Respondent's family arranged for a new ticket to be issued with a return date of January 6, 2006. Gabriella was scheduled to return to France on January 16, 2007 with Respondent. *See* copy of electronic plane ticket/itinerary attached hereto as Exhibit I.

14.  Just a few days before Alexandre was scheduled to return to France with Petitioner, Respondent informed Petitioner in front of her family (parents, brother and sister-in-law) *and the Children* on the evening of January 2, 2007, and has since then repeatedly affirmed, that she was not returning to France; that the Children were not returning to France; that she and the Children were moving in with her parents; and that she would be enrolling the Children in an American school in Dover, New Jersey. Upon information and belief, Respondent never intended to return to France after leaving France on December 22, 2006, and causing a new ticket to be purchased for Alexandre to return to France on January 6, 2007 was a ruse. The night of January 2, 2007, Respondent took the Children and left her parents'

6

house where we had all been staying together to go stay with them at her brother's house. Alexandre was in tears and was visibly shaken. Petitioner was told by Respondent that he could only see the Children on appointment, and with Respondent being present. At some point after arriving in the United States Respondent purloined the Children's French passeports, which had been kept by Petitioner.

15. Petitioner has not been served with any pleadings in any action commenced by Respondent relating to their marriage or to the Children. Petitioner is aware of no such action. **It is Petitioner's greatest desire and hope that Respondent will return with Respondent and the Children to their home in France so that they can continue their life together as a family**.

16. In light of the aforementioned French Civil Code and the Convention, Alexandre and Gabriella are currently being illegally held in custody, confinement and/or restraint by Respondent, her parents and/or her brother. Unless this Court takes immediate action to bring Respondent and the Children before the Court, irreparable harm will occur to the well-being of Alexandre and Gabriella in that they are being denied all proper access to their father and their home, school, friends and culture, and are being wrongfully detained in New Jersey. Unless a show cause order is issued, Plaintiff will continue to have no proper contact whatsoever with his son and daughter.

17. Petitioner has never acquiesced or consented to the removal (except for a 2-week vacation upon the express understanding that the Children were returning to France) or retention of Alexandre or Gabriella from France or to their retention outside of France.

## V. Provisional Remedies[11]

---

[11] This Court "[i]n furtherance of the objectives of ... the Convention ... may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." 42 U.S.C. § 11604 (1995).

18. Petitioner requests that the Court issue a show cause order and direct that the order be served on Respondent along with this Petition. Section 5(b) (Provisional Remedies) of ICARA provides, *inter alia*, that, in a proceeding under Section 4(b) for the return of a child, "No court exercising jurisdiction ... may ... order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." 42 U.S.C. § 11604. In this case, the State law referred to in Section 5(b) is that of New Jersey. In New Jersey, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") is the source for statutory law governing, *inter alia*, the resolution of both domestic and international child custody disputes. NJSA 34-53 *et seq.* New Jersey law addresses the appearance of the parties and the child in such cases in NJSA 2A:34-77 of the UCCJEA. That section authorizes this Court to order the appearance of the child and custodian or custodians together. *Id.* This Court therefore has the authority to order the immediate appearance of Respondent and the Children together.

19. Petitioner requests, for the well-being of Alexandre and Gabriella, that he be given immediate unrestricted access to Alexandre and Gabriella, pending further hearing in this Court.

20. Pending further hearing in this Court, it is requested that this Court issue an immediate order prohibiting the removal of Alexandre and Gabriella from the jurisdiction of this Court, taking into safe-keeping by the Court of all of the childrens' travel documents and setting an expedited hearing on the Petitioner for Return of Child to Petitioner, bearing in mind that Alexandre is scheduled to resume school January 8, 2007, and that this is a very important school year for him (equivalent to sixth or seventh grade in the United States).[12]

## VI. Relief Requested

---

[12] Such a Petition may also be treated as an application for a Writ of Habeas Corpus itself. *Zajaczkowski v. Zajaczkowska*, 932 F. Supp. 128, 132 (D.Md. 1996)("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus ... pursuant to 28 U.S.C. § 2243"); *see also In re McCullough*, 4 F. Supp.2d 411 (1998).

21. WHEREFORE, Petitioner respectfully requests the following relief:

a. a final Order directing the immediate return of the Children to their habitual residence of France.

b. the issuance of an immediate, provisional Order pending further hearing prohibiting the removal of the Children from the jurisdiction of this Court.

c. the issuance of an immediate, provisional Order pending further hearing that requiring Respondent to immediately remit to the Court for safe-keeping all of the Children's travel documents including, without limitation, their passports issued by France.

c. the issuance of an immediate, provisional Order pending further hearing granting Petitioner full and unrestricted access to the Children.

d. any such further relief as justice and its cause may require.

### VII. Notice of Hearing

22. Pursuant to 42 U.S.C. § 11603(c), Respondent will be given notice of any hearing in accordance with NJSA 2A:34-69 of the UCCJEA.[13]

23. The temporary restraints sought hereunder are sought ex parte, given the possible risk of flight in cases of parental abduction of children when served with Orders under the Hague Convention (*see, e.g., Fawcett v. McRoberts*, 168 F. Supp.2d 595, 597 (W.D. Va. 2001).

---

[13] The Convention itself does not specify any notice requirements. ICARA provides that notice be given in accordance with the applicable law governing notice in interstate child custody proceedings. 42 U.S.C. § 11603(c). In the United States, the Parental Kidnapping Prevention Act ("PKPA") and the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") govern notice in interstate child custody proceedings. *Klam v. Klam*, 797 F. Supp. 202, 205 (E.D.N.Y. 1992). The UCCJEA and Part (e) of the PKPA provide that reasonable notice and opportunity to be heard must be given to all parties before a custody determination is made. The UCCJEA further provides that notice shall be given in a manner reasonably calculated to give actual notice. In New Jersey, the relevant statute sis found in this State's UCCJEA in NJSA 2A:34-69. The Notice section provides, in pertinent part, that notice and an opportunity to be heard shall be given in a manner reasonably calculated to give actual notice. *Id.* Furthermore, in cases where flight of a respondent is at issue, federal courts have allowed substituted service in any manner reasonably effective to give the respondent notice of the suit. *Ingram v. Ingram*, 463 So.2d 932, 936 (La. App. 1985).

## VIII. Declaration Pursuant to Uniform Child Custody Jurisdiction and Enforcement Act

24.  The details regarding Alexandre and Gabriella that are required to be provided under the UCCJEA are as follows:

- The present forced location of Alexandre and Gabriella is 403 Holmes Street, Boonton, New Jersey 07005-2041.

- In the last five (5) years, Alexandre and Gabriella have lived with Petitioner and Respondent first at the family's home at Chemin de la Gippiere, Mougins, then 25 Chemin des Bastides du Plan, Grasse, then 1083 Chemin de Camp Lauvas, Mougins, all in France.

- Petitioner does not have information of any custody proceeding concerning the Children pending in any other court of this or any other state.

- Petitioner does not know of any person or institution not a party to the proceedings who has physical custody of the child or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with, the child.

### VERIFICATION

I, Philippe Guarino, solemnly declare and affirm under the penalties of perjury and the laws of the United States of America, that the contents of the foregoing Petition are true to the best of my knowledge, information and belief.

_____
Philippe Guarino

January 4, 2007

Exh. A.

Source: Legal > Federal Legal - U.S. > FR - Federal Register ⓘ
Terms: civil w/3 aspects w/5 international w/5 child w/5 abduction  (Edit Search | Suggest Terms for My Search)

✦Select for FOCUS™ or Delivery
☐

51 FR 10494

DEPARTMENT OF STATE

[Public Notice 957]

51 FR 10494

March 26, 1986

Hague International Child Abduction Convention; Text and Legal Analysis

**TEXT:**
On October 30, 1985 President Reagan sent the 1980 Hague Convention on the **Civil Aspects of International Child Abduction** to the U.S. Senate and recommended that the Senate give early and favorable consideration to the Convention and accord its advice and consent to U.S. ratification. The text of the Convention and the President's Letter of Transmittal, as well as the Secretary of State's Letter of Submittal to the President, were published shortly thereafter in Senate Treaty Doc. 99-11. On January 31, 1986 the Department of State sent to Senator Lugar, Chairman of the Senate Committee on Foreign Relations to which the Convention was referred, a detailed Legal Analysis of the Convention designed to assist the Committee and the full Senate in their consideration of the Convention. It is believed that broad availability of the Letters of Transmittal and Submittal, the English text of the Convention and the Legal Analysis will be of considerable help also to parents, the bench and the bar, as well as federal, State and local authorities, in understanding the Convention, and in resorting to or implementing it should the United States ultimately ratify it. Thus, these documents are reproduced below for the information of the general public.

Questions concerning the status of consideration of the Convention for U.S. ratification may be addressed to the Office of the Assistant Legal Adviser for Private International Law, Department of State, Washington, D.C. 20520 (telephone: (202) 653-9851). Inquiries on the action concerning the Convention taken by other countries may be addressed to the Office of the Assistant Legal Adviser for Treaty Affairs, Department of State (telephone: (202) 647-8135). Questions on the role of the federal government in the invocation and implementation of the Convention may be addressed to the Office of Citizens Consular Sevices, Department of State (telephone: (202) 647-3444).

Peter H. Pfund,

Assistant Legal Adviser for Private International Law.

Appendices:

A -- Letters of Transmittal and Submittal from Senate Treaty Doc. 99-11

B -- English text of Convention

C -- Legal Analysis

BILLING CODE 4710-08-M

[FR Doc. 86-6495 Filed 3-25-86; 8:45 am]

BILLING CODE 4710-08-M


Appendix A

LETTER OF TRANSMITTAL

THE WHITE HOUSE, *October 30, 1985.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith a certified copy of the Hague Convention on the **Civil Aspects of International Child Abduction,** adopted on October 24, 1980 by the Fourteenth Session of the Hague Conference on Private International Law and opened for signature on October 25, 1980.

The Convention is designed to secure the prompt return of children who have been abducted from their country of habitual residence or wrongfully retained outside that country. It also seeks to facilitate the exercise of visitation rights across international borders. The Convention reflects a worldwide concern about the harmful effects on children of parental kidnapping and a strong desire to fashion an effective deterrent to such conduct.

The Convention's approach to the problem of international child abduction is a simple one. The Convention is designed promptly to restore the factual situation that existed prior to a child's removal or retention. It does not seek to settle disputes about legal custody rights, nor does it depend upon the existence of court orders as a condition for returning children. The international abductor is denied legal advantage from the abduction to or retention in the country where the child is located, as resort to the Convention is to effect the child's swift return to his or her circumstances before the abduction or retention. In most cases this will mean return to the country of the child's habitual residence where any dispute about custody rights can be heard and settled.

The Convention calls for the establishment of a Central Authority in every Contracting State to assist applicants in securing the return of their children or in exercising their custody or visitation rights, and to cooperate and coordinate with their counterparts in other countries toward these ends. Moreover, the Convention establishes a judicial remedy in wrongful removal or retention cases which permits an aggrieved parent to seek a court order for the prompt return of the child when voluntary agreement cannot be achieved. An aggrieved parent may pursue both of these courses of action or seek a judicial remedy directly without involving the Central Authority of the country where the child is located.

The Convention would represent an important addition to the State and Federal laws currently in effect in the United States that are designed to combat parental kidnapping -- specifically, the Uniform Child Custody Jurisdiction Act now in effect in every State in the country, the Parental Kidnapping Prevention Act of 1980, the 1982 Missing Children Act and the Missing Children's Assistance Act. It would significantly improve the chances a parent in the United States has of recovering a child from a foreign Contracting State. It also provides a clear-cut method for parents abroad to apply for the return of children who have been wrongfully taken to or retained in this country. In short, by establishing a legal right and streamlined procedures for the prompt return of internationally abducted children, the Convention should remove many of the uncertainties and the legal difficulties that now

confront parents in international child abduction cases.

Federal legislation will be submitted to provide for the smooth implementation of the Convention within the United States. This legislation will be consistent with the spirit and intent of recent congressional initiatives dealing with the problem of interstate child abduction and missing children.

United States ratification of the Convention is supported by the American Bar Association. The authorities of many States have indicated a willingness to do their part to assist the Federal government in carrying out the mandates of the Convention.

I recommend that the Senate give early and favorable consideration to the Convention and accord its advice and consent to ratification, subject to the reservations described in the accompanying report of the Secretary of State.

RONALD REAGAN.

LETTER OF SUBMITTAL

DEPARTMENT OF STATE, *Washington, October 4, 1985.*

The PRESIDENT, *The White House.*

THE PRESIDENT: I have the honor to submit to you the Hague Convention on the **Civil Aspects of International Child Abduction** with the recommendation that it be transmitted to the Senate for its advice and consent to ratification.

The Convention was adopted on October 24, 1980 at the Fourteenth Session of the Hague Conference on Private International Law in Plenary Session by unanimous vote of twenty-three member states of that organization. The Convention was opened for signature on October 25, 1980, at which time it was signed by Canada, France, Greece and Switzerland. It was signed on behalf of the United States on December 23, 1981, and has also been signed by Belgium and Portugal. The Convention is in force for France, Portugal, Switzerland and most parts of Canada.

The Convention stemmed from a proposal first advanced at a Hague Conference Special Commission meeting in 1976 that the Conference prepare a treaty responsive to the global problem of international child abduction. The overriding objective was to spare children the detrimental emotional effects associated with transnational parental kidnapping.

The Convention establishes a system of administrative and legal procedures to bring about the prompt return of children who are wrongfully removed to or retained in a Contracting State. A removal or retention is wrongful within the meaning of the Convention if it violates custody rights that are defined in an agreement or court order, or that arise by operation of law, provided these rights are actually exercised (Article 3), i.e., custody has not in effect been abandoned. The Convention applies to abductions that occur both before and after issuance of custody decrees, as well as abductions by a joint custodian (Article 3). Thus, a custody decree is not a pre-requisite to invoking the Convention with a view to securing the child's return. By promptly restoring the *status quo ante,* subject to express requirements and exceptions, the Convention seeks to deny the abductor legal advantage in the country to which the child has been taken, as the courts of that country are under a treaty obligation to return the child without conducting legal proceedings on the merits of the underlying conflicting custody claims.

Each country must establish at least one national Central Authority primarily to process incoming and outgoing requests for assistance in securing the return of a child or the

exercise of visitation rights (Article 6). In the United States the Central Authority is to be located in an existing agency of the federal government which will, however, need to rely on state and local facilities, including the Federal Parent Locator Service and the private bar, in carrying out the measures listed in Article 7 of the Convention. These meassures include best efforts to locate abducted or retained children, explore possibilities for their voluntary return, facilitate provision of legal services in connection with judicial proceedings, and coordinate arrangements for the child's return travel (Article 7).

Articles 11-17 are the major provisions governing legal proceedings for the return of an abducted child. Under the Convention, if a proceeding is brought less than a year from the date of the removal or retention and the court finds that the conduct was wrongful, the court is under a treaty obligation to order the child returned. When proceedings are brought a year or more after the date of the removal or retention, the court is still obligated to order the child returned unless the person resisting return demonstrates that the child is settled in the new environment (Article 12).

Althoug15h the Convention ceases to apply as soon as a child reaches sixteen years of age (Article 4), it does not limit the power of appropriate authorities to order the return of an abducted or wrongfully retained child at any time pursuant to other laws or procedures that may make return in the absence of a treaty obligation possible (Article 18).

Articles 13 and 20 enumerate those exceptional circumstances under which the court is not obligated by the Convention to order the child returned. The person opposing return of the child bears the burden of proving that: (1) custody rights were not actually being exercised at the time of the removal or retention by the person seeking return or the person seeking return had consented to or subsequently acquiesced in the removal or retention; or (2) there is a grave risk that return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation. A court also has discretion to refuse to order a child returned if it finds that the child objects to being returned and has reached an age or degree of maturity making it appropriate to consider his or her views (Article 13). A court may also deny a request to return a child if the return would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms (Article 20). Unless one of the enumerated exceptions to the return obligation is deemed to apply, courts in Contracting States will be under a treaty obligation to order a child returned.

Visitation rights are also protected by the Convention, but to a lesser extent than custody rights (Article 21). The remedies for breach of the "access rights" of the non-custodial parent do not include the return remedy provided by Article 12. However, the non-custodial parent may apply to the Central Authority under Article 21 for "organizing or securing the effective exercise of rights of access." The Central Authority is to promote the peaceful enjoyment of these rights. The Convention is supportive of the exercise of visitation rights, i.e., visits of children with non-custodial parents, by providing for the prompt return of children if the non-custodial parent should seek to retain them beyond the end of the visitation period. In this way the Convention seeks to address the major concern of a custodial parent about permitting a child to visit the non-custodial parent abroad.

If the Convention machinery succeeds in rapidly restoring children to their pre-abduction or pre-retention circumstances, it will have the desirable effect of deterring parental kidnapping, as the legal and other incentives for wrongful removal or retention will have been eliminated. Indeed, while it is hoped that the Convention will be effective in returning children in individual cases, the full extent of its success may never by quantifiable as an untold number of potential parental kidnappings may have been deterred.

This country's participation in the development of the Convention was a logical extension of U.S. membership in the Hague Conference on Private International Law and bipartisan

domestic concern with interstate parental kidnapping, a phenomenon with roots in the high U.S. divorce rate and mobility of the population. In response to the public outcry over parental kidnapping, all states and the District of Columbia enacted the Uniform Child Custody Jurisdiction Act (UCCJA), and Congress has enacted the Parental Kidnapping Prevention Act (PKPA), the Missing Children Act, and the Missing Children's Assistance Act. These statutes address almost exclusively problems associated with inter-state parental kidnapping. The Convention will expand the remedies available to victims of parental kidnapping from or to the United States.

The Convention will be of great assistance to parents in the United States whose children are wrongfully taken to or retained in other Contracting States. Such persons now have no choice but to utilize laws and procedures applicable to recognition and enforcement of foreign custody decrees in the country in which the child is located. It is often necessary to retain a foreign lawyer and to apply or reapply for custody to a foreign court, which typically pits the U.S. petitioner against the abducting parent who may have his or her origins in that foreign country and may thus have the benefit of defending the custody suit in what may be a friendly forum. The Convention will be especially meaningful to parents whose children are abducted before U.S. custody orders have been issued because return proceedings under the Convention are not contingent upon the existence of such orders.

At any given time during the past several years, about half of the several hundred requests to the Department of State for assistance in recovering children taken out of the United States have involved abductions to countries which participated in the preparation and negotiation of the Hague Convention. This suggests that U.S. ratification of the Convention, and its ultimate ratification by many of those other countries, is likely to benefit a substantial number of future victim children and parents residing in the United States.

For parents residing outside the United States whose children have been wrongfully taken to or retained in this country, the Convention will likewise serve as a vehicle for prompt return. In such cases involving violations of existing foreign court orders, the victim parent outside the United States may either invoke the Convention or seek return of the child in connection with an action for recognition of the foreign custody decree pursuant to the UCCJA or other available means. The Convention will be especially advantageous in pre-decree abduction cases where no court order exists that may be enforced under the UCCJA.

The Convention has received widespread support. The Secretary of State's Advisory Committee on Private International Law -- on which ten major national legal organizations interested in international efforts to unify private law are represented -- has endorsed the Convention for U.S. ratification. The House of Delegates of the American Bar Association adopted a resolution in February, 1981 urging U.S. signature and ratification of the Convention. U.S. ratification is also supported by the Department of Justice and the Department of Health Services. In reply to a State Department letter inquiring whether and how the states of the United States could assist in implementing the Convention if it were ratified by the United States, officials of many states welcomed the Convention in principle and expressed general willingness to cooperate with the federal Central Authority in its implementation.

The Department believes that federal legislation will be needed fully to give effect to various provisions of the Convention. Draft legislation is being prepared for introduction in both houses of Congress. The United States instrument of ratification would be deposited only after satisfactory legislation has been enacted.

I recommend that the United States enter two reservations at the time of deposit of its instrument of ratification, both of which are specifically permitted by the Convention.

(1) The United States should enter a reservation to ensure that all documents sent to the

U.S. Central Authority in a foreign language are accompanied by a translation into English. The reservation should read:

Pursuant to the second paragraph of Article 24, and Article 42, the United States makes the following reservation: All applications, communications and other documents sent to the United States Central Authority should be accompanied by their translation into English.

(2) The second reservation should read:

Pursuant to the third paragraph of Article 26, the United States declares that it will not be bound to assume any costs or expenses resulting from the participation of legal counsel or advisers or from court and legal proceedings in connection with efforts to return children from the United States pursuant to the Convention except insofar as those costs or expenses are covered by a legal aid program.

It is hoped that the Senate will promptly consider this Convention and give its advice and consent to its ratification by the United States.

Respectfully submitted,

GEORGE P. SHULTZ.

Appendix B

CONVENTION ON THE **CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION**

The States signatory to the present Convention.

Firmly convinced that the interests of children are of paramount importance in matters relating to their custody.

Desiring to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access.

Have resolved to conclude a Convention to this effect, and have agreed upon the following provisions --

CHAPTER I -- SCOPE OF THE CONVENTION

*Article 1*

The objects of the present Convention are --

*a* to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

*b* to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

*Article 2*

Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.

*Article 3*

The removal or the retention of a child is to be considered wrongful where --

*a* it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

*b* at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph *a* above, may arise in particular by operation of law or by reason of a judicial or administative decision, or by reason of an agreement having legal effect under the law of that State.

*Article 4*

The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years.

*Article 5*

For the purposes of this Convention --

*a* 'rights of custody' shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;

*b* 'rights of access' shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

CHAPTER II -- CENTRAL AUTHORITIES

*Article 6*

A Contracting State shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities.

Federal States, States with more than one system of law or States having autonomous territorial organizations shall be free to appoint more than one Central Authority and to specify the territorial extent of their powers. Where a State has appointed more than one Central Authority, it shall designate the Central Authority to which applications may be addressed for transmission to the appropriate Central Authority within that State.

*Article 7*

Central Authorities shall co-operate with each other and promote co-operation amongst the competent authorities in their respective States to secure the prompt return of children and to achieve the other objects of this Convention.

In particular, either directly or through any intermediary, they shall take all appropriate measures --

*a* to discover the whereabouts of a child who has been wrongfully removed or retained;

*b* to prevent further harm to the child or prejudice to interested parties by taking or causing

to be taken provisional measures;

*c* to secure the voluntary return of the child or to bring about an amicable resolution of the issues;

*d* to exchange, where desirable, information relating to the social background of the child;

*e* to provide information of a general character as to the law of their State in connection with the application of the Convention;

*f* to initiate or facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child and, in a proper case, to make arrangements for organizing or securing the effective exercise of rights of access;

*g* where the circumstances so require, to provide or facilitate the provision of legal aid and advice, including the participation of legal counsel and advisers;

*h* to provide such administrative arrangements as may be necessary and appropriate to secure the safe return of the child;

*i* to keep each other informed with respect to the operation of this Convention and, as far as possible, to eliminate any obstacles to its application.

CHAPTER III -- RETURN OF CHILDREN

*Article 8*

Any person, institution or other body claiming that a child has been removed or retained in breach of custody rights may apply either to the Central Authority of the child's habitual residence or to the Central Authority of any other Contracting State for assistance in securing the return of the child.

The application shall contain --

*a* information concerning the identity of the applicant, of the child and of the person alleged to have removed or retained the child;

*b* where available, the date of birth of the child;

*c* the grounds on which the applicant's claim for return of the child is based;

*d* all available information relating to the whereabouts of the child and the identity of the person with whom the child is presumed to be.

The application may be accompanied or supplemented by --

*e* an authenticated copy of any relevant decision or agreement;

*f* a certificate or an affidavit emanating from a Central Authority, or other competent authority of the State of the child's habitual residence, or from a qualified person, concerning the relevant law of that State;

*g* any other relevant document.

*Article 9*

If the Central Authority which receives an application referred to in Article 8 has reason to believe that the child is in another Contracting State, it shall directly and without delay transmit the application to the Central Authority of that Contracting State and inform the requesting Central Authority, or the applicant, as the case may be.

*Article 10*

The Central Authority of the State where the child is shall take or cause to be taken all appropriate measures in order to obtain the voluntary return of the child.

*Article 11*

The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.

If the judicial or administrative authority concerned has not reached a decision within six weeks from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay. If a reply is received by the Central Authority of the requested State, that Authority shall transmit the reply to the Central Authority of the requesting State, or to the applicant, as the case may be.

*Article 12*

Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child.

*Article 13*

Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that --

*a* the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or

*b* there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.

In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

*Article 14*

In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognized or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.

*Article 15*

The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

*Article 16*

After receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice.

*Article 17*

The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention.

*Article 18*

The provisions of this Chapter do not limit the power of a judicial or administrative authority to order the return of the child at any time.

*Article 19*

A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.

*Article 20*

The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

CHAPTER IV -- RIGHTS OF ACCESS

*Article 21*

An application to make arrangements for organizing or securing the effective exercise of
rights of access may be presented to the Central Authorities of the Contracting States in the
same way as an application for the return of a child.

The Central Authorities are bound by the obligations of co-operation which are set forth in
Article 7 to promote the peaceful enjoyment of access rights and the fulfilment of any
conditions to which the exercise of those rights may be subject. The Central Authorities shall
take steps to remove, as far as possible, all obstacles to the exercise of such rights. The
Central Authorities, either directly or through intermediaries, may initiate or assist in the
institution of proceedings with a view to organizing or protecting these rights and securing
respect for the conditions to which the exercise of these rights may be subject.

CHAPTER V -- GENERAL PROVISIONS

*Article 22*

No security, bond or deposit, however described, shall be required to guarantee the payment
of costs and expenses in the judicial or administrative proceedings falling within the scope of
this Convention.

*Article 23*

No legalization or similar formality may be required in the context of this Convention.

*Article 24*

Any application, communication or other document sent to the Central Authority of the
requested State shall be in the original language, and shall be accompanied by a translation
into the official language or one of the official languages of the requested State or, where
that is not feasible, a translation into French or English.

However, a Contracting State may, by making a reservation in accordance with Article 42,
object to the use of either French or English, but not both, in any application, communication
or other document sent to its Central Authority.

*Article 25*

Nationals of the Contracting States and persons who are habitually resident within those
States shall be entitled in matters concerned with the application of this Convention to legal
aid and advice in any other Contracting State on the same conditions as if they themselves
were nationals of and habitually resident in that State.

*Article 26*

Each Central Authority shall bear its own costs in applying this Convention.

Central Authorities and other public services of Contracting States shall not impose any
charges in relation to applications submitted under this Convention. In particular, they may
not require any payment from the applicant towards the costs and expenses of the
proceedings or, where applicable, those arising from the participation of legal counsel or
advisers. However, they may require the payment of the expenses incurred or to be incurred

in implementing the return of the child.

However, a Contracting State may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, except insofar as those costs may be covered by its system of legal aid and advice.

Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

*Article 27*

When it is manifest that the requirements of this Convention are not fulfilled or that the application is otherwise not well founded, a Central Authority is not bound to accept the application. In that case, the Central Authority shall forthwith inform the applicant or the Central Authority through which the application was submitted, as the case may be, of its reasons.

*Article 28*

A Central Authority may require that the application be accompanied by a written authorization empowering it to act on behalf of the applicant, or to designate a representative so to act.

*Article 29*

This Convention shall not preclude any person, institution or body who claims that there has been a breach of custody or access rights within the meaning of Article 3 or 21 from applying directly to the judicial or administrative authorities of a Contracting State, whether or not under the provisions of this Convention.

*Article 30*

Any application submitted to the Central Authorities or directly to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States.

*Article 31*

In relation to a State which in matters of custody of children has two or more systems of law applicable in different territorial units --

*a* any reference to habitual residence in that State shall be construed as referring to habitual residence in a territorial unit of that State;

*b* any reference to the law of the State of habitual residence shall be construed as referring to the law of the territorial unit in that State where the child habitually resides.

*Article 32*

In relation to a State which in matters of custody of children has two or more systems of law applicable to different categories of persons, any reference to the law of that State shall be construed as referring to the legal system specified by the law of that State.

*Article 33*

A State within which different territorial units have their own rules of law in respect of custody of children shall not be bound to apply this Convention where a State with a unified system of law would not be bound to do so.

*Article 34*

This Convention shall take priority in matters within its scope over the *Convention of 5 October 1961 concerning the powers of authorities and the law applicable in respect of protection of minors,* as between Parties to both Conventions. Otherwise the present Convention shall not restrict the application of an international instrument in force between the State of origin and the State addressed or other law of the State addressed for the purposes of obtaining the return of a child who has been wrongfully removed or retained or of organizing access rights.

*Article 35*

This Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States.

Where a declaration has been made under Article 39 or 40, the reference in the preceding paragraph to a Contracting State shall be taken to refer to the territorial unit or units in relation to which this Convention applies.

*Article 36*

Nothing in this Convention shall prevent two or more Contracting States, in order to limit the restrictions to which the return of the child may be subject, from agreeing among themselves to derogate from any provisions of this Convention which may imply such a restriction.

CHAPTER VI -- FINAL CLAUSES

*Article 37*

The Convention shall be open for signature by the States which were Members of the Hague Conference on Private International Law at the time of its Fourteenth Session.

It shall be ratified, accepted or approved and the instruments of ratification, acceptance or approval shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

*Article 38*

Any other State may accede to the Convention.

The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Kingdom of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

*Article 39*

Any State may, at the time of signature, ratification, acceptance, approval or accession, declare that the Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect at the time the Convention enters into force for that State.

Such declaration, as well as any subsequent extension, shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

*Article 40*

If a Contracting State has two or more territorial units in which different systems of law are applicable in relation to matters dealt with in this Convention, it may at the time of signature, ratification, acceptance, approval or accession declare that this Convention shall entend to all its territorial units or only to one or more of them and may modify this declaration by submitting another declaration at any time.

Any such declaration shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands and shall state expressly the territorial units to which the Convention applies.

*Article 41*

Where a Contracting State has a system of government under which executive, judicial and legislative powers are distributed between central and other authorities within that State, its signature or ratification, acceptance or approval of, or accession to this Convention, or its making of any declaration in terms of Article 40 shall carry no implication as to the internal distribution of powers within that State.

*Article 42*

Any State may, not later than the time of ratification, acceptance, approval or accession, or at the time of making a declaration in terms of Article 39 or 40, make one or both of the reservations provided for in Article 24 and Article 26, third paragraph. No other reservation shall be permitted.

Any State may at any time withdraw a reservation it has made. The withdrawal shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The reservation shall cease to have effect on the first day of the third calendar month after the notification referred to in the preceding paragraph.

*Article 43*

The Convention shall enter into force on the first day of the third calendar month after the

deposit of the third instrument of ratification, acceptance, approval or accession referred to in Articles 37 and 38.

Thereafter the Convention shall enter into force --

1 for each State ratifying, accepting, approving or acceding to it subsequently, on the first day of the third calendar month after the deposit of its instrument of ratification, acceptance, approval or accession;

2 for any territory or territorial unit to which the Convention has been extended in conformity with Article 39 or 40, on the first day of the third calendar month after the notification referred to in that Article.

*Article 44*

The Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 43 even for States which subsequently have ratified, accepted, approved it or acceded to it.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands at least six months before the expiry of the five year period. It may be limited to certain of the territories or territorial units to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.

*Article 45*

The Ministry of Foreign Affairs of the Kingdom of the Netherlands shall notify the States Members of the Conference, and the States which have acceded in accordance with Article 38, of the following --

1 the signatures and ratifications, acceptances and approvals referred to in Article 37;

2 the accessions referred to in Article 38;

3 the date on which the Convention enters into force in accordance with Article 43;

4 the extensions referred to in Article 39;

5 the declarations referred to in Articles 38 and 40;

6 the reservations referred to in Article 24 and Article 26, third paragraph, and the withdrawals referred to in Article 42;

7 the denunciations referred to in Article 44.

In witness whereof the undersigned, being duly authorized thereto, have signed this Convention.

Done at The Hague, on the 25th day of October, 1980, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Kingdom of the Netherlands, and of which a certified copy shall be sent, through diplomatic channels, to each of the States Members of the Hague Conference

on Private International Law at the date of its Fourteenth Session.

BILLING CODE 4710-08-C

Appendix C -- Legal Analysis of the Hague Convention on the **Civil Aspects of International Child Abduction**

*Introduction*

The Hague Convention on the **Civil Aspects of International Child Abduction** consists of six chapters containing forty-five articles. While not formally incorporated into the Convention, a model form was prepared when the Convention was adopted by the Hague Conference on Private International Law and was recommended for use in making application for the return of wrongfully removed or retained children. A copy of that form is annexed to this Legal Analysis. (The form to be used for the return of children from the United States may seek additional information.)

*Table of Contents*

To facilitate understanding of the Convention by the Senate and the use and interpretation of the Convention by parents, judges, lawyers and public and private agency personnel, the articles are analyzed and discussed in the following categories:

*I. Children Protected by the Convention*

(Preamble, Article 1)

A. Age (Articles 4, 36, 18, 29, 34, 13)

B. Residence (Article 4)

C. Timing/cases covered (Article 35)

D. Effect of custody order concerning the child

1. Existing custody orders (Articles 17, 3)

2. Pre-decree removals or retentions (Article 3)

*II. Conduct Actionable Under the Convention*

A. International "child abduction" not criminal: Hague Convention distinguished from extradition treaties (Article 12)

B. "Wrongful removal or retention" (Articles 1, 3, 5(a))

1. Holders of rights protected by the Convention (*i.e.,* with respect to whom the removal or retention is wrongful)

(a) "Person, institution or other body" (Article 3(a), (b))

(b) "Jointly or alone" (Article 3(a), (b))

2. Defined

(a) Breach of "custody rights" (Articles 3(a), 5(a))

Exh. B



```
IDFRAGUARINO<<<<<<<<<<<<<<<<<<<061042
0406061045372PHILIPPE<<<<<<5712207M5
```



```
IDFRAGUARINO<<<<<<<<<<<<<<<<<<<061033
0406061043725ALEXANDRE<<FRA9502264M9
```



```
IDFRAGUARINO<<<<<<<<<<<<<<<<<<<061033
0407061013947GABRIELLA<<HOL0303136F9
```

Exh. C



Exh. D

159-4005038



UNITED STATES OF AMERICA
DEPARTMENT OF STATE

# Consular Report of Birth Abroad
### of a Citizen of the United States of America

This is to certify that    GABRIELLA HOLLY GUARINO    sex FEMALE
*(Name)*

born at GRASSE    ,    FRANCE
*(City)*    *(Country)*

on MARCH 13, 2003    acquired United States citizenship at birth as established by documentary evidence presented
*(Date)*

to the Consular Service of the United States at    Marseille, France
*(City / Country)*

on JUNE 16, 2003    .
*(Date)*

PARENTS

Father    PHILIP LOUIS GUARINO

Mother    JOAN PATRICIA HOLLY GUARINO

Date of Birth DECEMBER 20, 1957    Date of Birth    AUGUST 22, 1959

(SEAL)

_____
*(Signature of Authorizing Official)*

CONSUL
*(Title)*

MARSEILLE, FRANCE
*(City / Country)*

JUNE 16, 2003
*(Date)*

FORM FS-240    A Consular Report of Birth is proof of United States citizenship by law: 22 USC 2705

Exh. E

UNITED STATES DEPARTMENT OF STATE

# APPLICATION FOR ASSISTANCE UNDER THE HAGUE CONVENTION ON CHILD ABDUCTION

SEE PRIVACY STATEMENT ON REVERSE

OMB NO. 1405-0076
EXPIRES: 8-31-95
Estimated Burden - 1 - hour

## I. IDENTITY OF CHILD AND PARENTS

| CHILD'S NAME (LAST, FIRST, MIDDLE) | DATE OF BIRTH | PLACE OF BIRTH |
|---|---|---|
| Guarino, Gabriella-Holly | 3/13/03 | Gralle France |

| ADDRESS (Before removal) | U.S. SOCIAL SECURITY NO. | PASSPORT/IDENTITY CARD | NATIONALITY |
|---|---|---|---|
| 1083 Chemin de Camp Laures 06250 Mougins, France | Unknown | COUNTRY: France NO. 04EE83170 | French & US |

| HEIGHT | WEIGHT | COLOR OF HAIR | COLOR OF EYES |
|---|---|---|---|
| 2' | Approx 30 lbs | Brown | Brown |

### FATHER

| NAME (Last, First, Middle) |
|---|
| Guarino Philippe Louis |

| DATE OF BIRTH | PLACE OF BIRTH |
|---|---|
| 12/20/57 | New York |

| NATIONALITY | OCCUPATION | PASSPORT/IDENTITY CARD |
|---|---|---|
| French & U.S. | Attorney | COUNTRY: France NO: 04EE79768 |

CURRENT ADDRESS AND TELEPHONE NUMBER
C/o Phillips Nizer
666 5th Ave.
NY NY 10103  212/841-0524

U.S. SOCIAL SECURITY NO.
157 58 9621

COUNTRY OF HABITUAL RESIDENCE
France

DATE AND PLACE OF MARRIAGE AND DIVORCE, IF APPLICABLE
Married 2/6/88 in New York

### MOTHER

| NAME (Last, First, Middle) |
|---|
| Guarino, Joan Patricia |

| DATE OF BIRTH | PLACE OF BIRTH |
|---|---|
| 8/ | Dover New Jersey U.S.A |

| NATIONALITY | OCCUPATION | PASSPORT/IDENTITY CARD |
|---|---|---|
| U.S | None | COUNTRY: France NO: Unknown |

CURRENT ADDRESS AND TELEPHONE NUMBER
403 Holmes Street
Boynton NJ
973 334 3428

U.S. SOCIAL SECURITY NO.
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

COUNTRY OF HABITUAL RESIDENCE
France

## II. REQUESTING INDIVIDUAL OR INSTITUTION

| NAME (Last, First, Middle) | NATIONALITY | OCCUPATION |
|---|---|---|
| Guarino Philippe | French & U.S. | Attorney |

CURRENT ADDRESS AND TELEPHONE NUMBER
C/o Phillips Nizer
666 5th Ave.
NY NY 10103  212/841-0524

| | PASSPORT/IDENTITY CARD |
|---|---|
| COUNTRY OF HABITUAL RESIDENCE France | COUNTRY: France NO.: 04EE79768 |

| RELATIONSHIP TO CHILD | NAME, ADDRESS, AND TELEPHONE NO. OF LEGAL ADVISER, IF ANY |
|---|---|
| Father | None |

## III. INFORMATION CONCERNING THE PERSON ALLEGED TO HAVE WRONGFULLY REMOVED OR RETAINED CHILD

| NAME (Last, First, Middle) | KNOWN ALIASES |
|---|---|
| Guarino Joan Patricia | None |

| DATE OF BIRTH | PLACE OF BIRTH | NATIONALITY |
|---|---|---|
| 8/22/59 | Denville N.J. | USA |

| OCCUPATION, NAME AND ADDRESS OF EMPLOYER | PASSPORT/IDENTITY CARD | U.S. SOCIAL SECURITY NO. |
|---|---|---|
| None | COUNTRY: U.S.A. NO.: Unknown | 157580077 |

CURRENT LOCATION OR LAST KNOWN ADDRESS IN THE U.S.
403 Holmes Street Roonton New Jersey USA 07005

| HEIGHT | WEIGHT | COLOR OF HAIR | COLOR OF EYES |
|---|---|---|---|
| 5'9" | Approx 160 lbs | Brown | Brown |

FORM
6-88  DSP-105

**OTHER PERSONS WITH POSSIBLE ADDITIONAL INFORMATION RELATING TO THE WHEREABOUTS OF CHILD**
*(Name, address, telephone number)*

Bogert Holly (Grandfather)
Helen Holly (Grandmother)
64 Scode mine Rd
Dover NJ
973/366-1537

John Holly (Uncle)
Meredith Holly (Aunt)
403 Holmes St.
Boonton NJ

**IV. TIME, PLACE DATE, AND CIRCUMSTANCES OF THE WRONGFUL REMOVAL OR RETENTION**

On January 2, 2007, Wife Announced that she would not return to France from our 2-week vacation in the U.S.; that the children would not return to France; that she would be enrolling children in a U.S. school; & that she and the children were moving in with her parents in Dover NJ

**V. FACTUAL OR LEGAL GROUNDS JUSTIFYING THE REQUEST**

Daughter 3 1/2 yrs old born and raised in France. Son has lived in France since age of 2 (now 12 in February) Continuous residence in France for last ten years. They have no ties or connection to U.S. other than through grandparents & uncle.

**VI. CIVIL PROCEEDINGS IN PROGRESS, IF ANY**

OIS/C and Petition filed today in U.S.D.C. district of New Jersey.

**VII. CHILD IS TO BE RETURNED TO:**

NAME *(LAST, FIRST MIDDLE)*
Guerrino, Philippe Louis

DATE OF BIRTH
12/30/57

PLACE OF BIRTH
New York

ADDRESS
1063 Chemin de Camp Laurel
06250 Mougins France

TELEPHONE NUMBER
212/841-0524

PROPOSED ARRANGEMENTS FOR RETURN TRAVEL OF CHILD

By plane.

**VIII. OTHER REMARKS**

**IX. DOCUMENTS ATTACHED (PREFERABLY CERTIFIED)**

☐ DIVORCE DECREE
☐ CUSTODY DECREE
☒ PHOTOGRAPH OF CHILD
☐ OTHER AGREEMENT CONCERNING CUSTODY
☐ OTHER

SIGNATURE OF APPLICANT AND/OR STAMP OF CENTRAL AUTHORITY

DATE
1/4/07

PLACE
New York NY

PRIVACY ACT STATEMENT
This information is requested under the authority of the International Child Abduction Remedies Act, Public Law 100-300. The information will be used for the purpose of evaluating applicants' claims under the Hague Convention on the Civil Aspects of International Child Abduction, locating abducted children and advising applicants about available legal remedies. Without the requested information, U.S. authorities may be unable to effectively to assist in locating abducted children.

* Public reporting burden for this collection of information is estimated to average 1 hour per response, including time required for searching existing data sources, gathering the necessary data, providing the information required, and reviewing the final collection. Send comments on the accuracy of this estimate or the burden and recommendations for reducing it to: Department of State (OIS/HA/DBA) Washington, D.C. 20520-0264, and to the Office of ...



```
IDFRAGUARINO<<<<<<<<<<<<<<<<<<061033
0407061013947GABRIELLA<<HOL0303136F9
```

159-4005038



UNITED STATES OF AMERICA
DEPARTMENT OF STATE

# Consular Report of Birth Abroad

of a Citizen of the United States of America

This is to certify that _GABRIELLA HOLLY GUARINO_ sex _FEMALE_
_(Name)_

born at _GRASSE_ _FRANCE_
_(City)_ _(Country)_

on _MARCH 13, 2003_ acquired United States citizenship at birth as established by documentary evidence presented
_(Date)_

to the Consular Service of the United States at _Marseille, France_
_(City/Country)_

on _JUNE 16, 2003_
_(Date)_

## PARENTS

_PHILIP LOUIS GUARINO_ _JOAN PATRICIA HOLLY GUARINO_
Father Mother

Date of Birth _DECEMBER 20, 1957_ Date of Birth _AUGUST 22, 1959_

(SEAL)

_(Signature of Authorizing Official)_

_CONSUL_
_(Title)_

_MARSEILLE, FRANCE_
_(City/Country)_

_JUNE 16, 2003_
_(Date)_

FORM FS-240

A Consular Report of Birth is proof of United States citizenship by law: 22 USC 2705

UNITED STATES DEPARTMENT OF STATE

# APPLICATION FOR ASSISTANCE UNDER THE HAGUE CONVENTION ON CHILD ABDUCTION

SEE PRIVACY STATEMENT ON REVERSE

OMB NO. 1405-0076
EXPIRES: 8-31-95
Estimated Burden - 1 hour

## I. IDENTITY OF CHILD AND PARENTS

**CHILD'S NAME (LAST, FIRST, MIDDLE)**
Guarino, Alexandre François

**DATE OF BIRTH:** 2/26/95

**PLACE OF BIRTH:** New York

**ADDRESS (Before removal)**
1083 Chemin de Camp Lauris
06250 Mougins, France

**U.S. SOCIAL SECURITY NO.** Unknown

**PASSPORT/IDENTITY CARD COUNTRY:** France
NO. 04EE79769

**NATIONALITY** French & US

**HEIGHT** 3t 4'7"

**WEIGHT** Approx 80 lbs

**COLOR OF HAIR** Brown

**COLOR OF EYES** Brown

### FATHER

**NAME (Last, First, Middle)**
Guarino Philippe Louis

**DATE OF BIRTH:** 12/20/57

**PLACE OF BIRTH:** New York

**NATIONALITY** French & U.S.

**OCCUPATION** Attorney

**PASSPORT/IDENTITY CARD COUNTRY:** France
NO: 04EE79768

**CURRENT ADDRESS AND TELEPHONE NUMBER**
C/o Phillips Nizer
666 5th Ave.
NY NY 10103  212/841-0524

**U.S. SOCIAL SECURITY NO.** 151 58 9621

**COUNTRY OF HABITUAL RESIDENCE** France

### MOTHER

**NAME (Last, First, Middle)**
Guarino, Joan Patricia

**DATE OF BIRTH:** 8/22/59

**PLACE OF BIRTH:** Dover New Jersey USA

**NATIONALITY** U.S

**OCCUPATION** None

**PASSPORT/IDENTITY CARD COUNTRY:** USA
NO: Unknown

**CURRENT ADDRESS AND TELEPHONE NUMBER**
403 Holmes Street
Boonton NJ
973 334 3428  973/334-3428

**U.S. SOCIAL SECURITY NO.** 157580077

**COUNTRY OF HABITUAL RESIDENCE** France

**DATE AND PLACE OF MARRIAGE AND DIVORCE, IF APPLICABLE**
Married 2/6/88 in New York

## II. REQUESTING INDIVIDUAL OR INSTITUTION

**NAME (Last, First, Middle)**
Guarino Philippe

**NATIONALITY** French & US.

**OCCUPATION** Attorney

**CURRENT ADDRESS AND TELEPHONE NUMBER**
C/o Phillips Nizer
666 5th Ave
NY NY 10103  212/841-0524

**PASSPORT/IDENTITY CARD COUNTRY:** France
NO.: 04EE79768

**COUNTRY OF HABITUAL RESIDENCE** France

**RELATIONSHIP TO CHILD** Father

**NAME, ADDRESS, AND TELEPHONE NO. OF LEGAL ADVISER, IF ANY**
None

## III. INFORMATION CONCERNING THE PERSON ALLEGED TO HAVE WRONGFULLY REMOVED OR RETAINED CHILD

**NAME (Last, First, Middle)**
Guarino Joan Patricia

**KNOWN ALIASES** None

**DATE OF BIRTH:** 8/22/59

**PLACE OF BIRTH:** Denville, NJ

**NATIONALITY** USA

**OCCUPATION, NAME AND ADDRESS OF EMPLOYER** None

**PASSPORT/IDENTITY CARD COUNTRY:** U.S.A.
NO.: Unknown

**U.S. SOCIAL SECURITY NO.** 157580077

**CURRENT LOCATION OR LAST KNOWN ADDRESS IN THE U.S.**
403 Holmes Street Boonton New Jersey USA 07005

**HEIGHT** 5'9"

**WEIGHT** Approx 160 lbs

**COLOR OF HAIR** Brown

**COLOR OF EYES** Brown

FORM
6-88   DSP-105

**OTHER PERSONS WITH POSSIBLE ADDITIONAL INFORMATION RELATING TO THE WHEREABOUTS OF CHILD**
*(Name, address, telephone number)*

Bogart Holly (Grandfather)
Helen Holly (Grandmother)
14 Suede mine Rd
Dover NJ
973/366-1537

John Holly (uncle)
meridith Holly (Aunt)
403 Holmes St.
Boonton, NJ
973/334-3428

**IV. TIME, PLACE DATE, AND CIRCUMSTANCES OF THE WRONGFUL REMOVAL OR RETENTION**

On January 2, 2007, Wife announced that she would not return to France from our 2-week vacation in the U.S.; that the children would not return to France, that she would be enrolling children in a U.S. school; & that she and the children were moving in with her parents in Dover NJ

**V. FACTUAL OR LEGAL GROUNDS JUSTIFYING THE REQUEST**

Daughter 3 1/2 yrs old born and raised in France. Son has lived in France since age of 2 (now 12 in February) Continuous residence in France for last ten years. They have no ties or connection to U.S. other than through grandparents & uncle.

**VI. CIVIL PROCEEDINGS IN PROGRESS, IF ANY**

OISIC and Petition filed today in U.S.D.C. district of New Jersey.

**VII. CHILD IS TO BE RETURNED TO:**

| NAME (LAST, FIRST MIDDLE) | DATE OF BIRTH | PLACE OF BIRTH |
|---|---|---|
| Ouareno, Philippe Louis | 12/30/57 | New York |

ADDRESS
1063 Chemin de Camp Wants
06250 Mougins France.

TELEPHONE NUMBER
212/841-0324

PROPOSED ARRANGEMENTS FOR RETURN TRAVEL OF CHILD

By Plane.

**VIII. OTHER REMARKS**

**IX. DOCUMENTS ATTACHED (PREFERABLY CERTIFIED)**

☐ DIVORCE DECREE          ☒ PHOTOGRAPH OF CHILD          ☐ OTHER _____
☐ CUSTODY DECREE          ☐ OTHER AGREEMENT CONCERNING CUSTODY

| SIGNATURE OF APPLICANT AND/OR STAMP OF CENTRAL AUTHORITY | DATE | PLACE |
|---|---|---|
|  | 1/4/07 | New York NY |

**PRIVACY ACT STATEMENT**
This information is requested under the authority of the International Child Abduction Remedies Act, Public Law 100-300. The information will be used for the purpose of evaluating applicants' claims under the Hague Convention on the Civil Aspects of International Child Abduction, locating abducted children and advising applicants about available legal remedies. Without the requested information, U.S. authorities may be unable effectively to assist in locating abducted children.

Public reporting burden for this collection of information is estimated to average 1 hour per response, including time required for searching existing data sources, gathering the necessary data, providing the information required, and reviewing the final collection. Send comments on the accuracy of this estimate of the burden and recommendations for reducing it to: Department of State (DIS/RA/DBR) Washington, D.C. 20520-0264, and to the Office.



IDFRAGUARINO<<<<<<<<<<<<<<<<061033
0406061043725ALEXANDRE<<FRA9502264M9



Beth Israel Medical Center

Beth Israel Hospital

New York, New York

This Certifies that Alexandre Francois Guarino

was born to Joan and Philip Guarino

the 26th day of February 19 95

at 12:50A. m. on Sunday in this Hospital

In Witness Whereof the said Hospital has

caused this Certificate to be signed by its duly

authorized officer and its Corporate Seal to

be hereunto affixed.

Attending Physician

Exh. F

01/03/2007 15:17 FAX 7032742122 NCMEC INTERNATIONAL ☐004/025
Case 2:07-cv-00045-SDW-MCA Document 1 Filed 01/04/07 Page 44 of 50 PageID: 46
Legifrance - Le service public de l'accès au droit

Page 1 de 12

# TITLE IX
## OF PARENT AND CHILD (II : OF PARENTAL AUTHORITY)
### (Act n° 70-459 of 4 June 1970)

## CHAPTER I - OF PARENTAL AUTHORITY WITH REGARD TO THE PERSON OF A CHILD

### Art. 371

A child, at any age, owes honour and respect to his father and mother.

### Art. 371-1

#### (Act n° 2002-305 of 4 March 2002)

Parental authority is a set of rights and duties whose finality is the welfare of the child.

It belongs to the father and mother until the majority or emancipation of the child in order to protect him in his security, health and morality, to ensure his education and allow his development, showing regard to his person.

Parents shall make a child a party to decisions relating to him, according to his age and degree of maturity.

### Art. 371-2

#### (Act n° 2002-305 of 4 March 2002)

Each one of the parents shall contribute to the education and support of the children in proportion to his or her means, to those of the other parent and to the needs of the child.

That obligation does not come to an end as of right where the child is of age.

### Art. 371-3

A child may not, without the permission of the father and mother, leave the family home and he may be removed from it only in cases of necessity as determined by statute.

### Art. 371-4

#### (Act n° 2002-305 of 4 March 2002)

A child has the right to have personal relations with his grandparents. Only serious reasons may constitute a bar to that right.

Where the welfare of the child so requires, the family causes judge shall fix the details of the relations between a child and a third person, relative or not.

### Art. 371-5

#### (Act n° 96-1238 of 30 Dec. 1996)

A child may not be separated from its brothers and sisters, unless this is not possible or where his welfare dictates a different solution. If there is occasion, the

Exh. G

MOUGINS
TELEPHONE: 04.92.28.50.80
FAX    : 04.92.28.50.81
EML:MOUGINS@THOMASCOOKFR.COM

BRITISH AIRWAYS - BA 112
SAM 06JAN    NEW YORK NY    LONDON GB         1830    0625
          JOHN F KENNEDY    HEATHROW             07JAN
SANS ESCALE   TERMINAL 7       TERMINAL 4       DUREE   6:55
                              VOL NON FUMEUR
          RESERVATION CONFIRMEE   Y ECONOMIQUE
          A BORD : REPAS
          EQUIPEMENT:BOEING 747-400

BRITISH AIRWAYS - BA 342
DIM 07JAN    LONDON GB       NICE FR       0755    1050
          HEATHROW         COTE D AZUR
SANS ESCALE   TERMINAL 1       TERMINAL 1       DUREE   1:55
                              VOL NON FUMEUR
          RESERVATION CONFIRMEE   Y ECONOMIQUE
          A BORD : COLLATION
          EQUIPEMENT:BOEING 757-200/300

NUMERO DE RESERVATION  BA/NOSYNC

GUARINO/ALEXANDRE              BILLET BA/ETKT 125 4365301799

TARIF 1113EUR
          CRISTINA ET SEGOLENE
          VOUS SOUHAITENT UN AGREABLE SEJOUR !

Exh. H

## Philip L. Guarino

| | |
|---|---|
| **From:** | Philip L. Guarino |
| **Sent:** | Thursday, December 21, 2006 2:38 AM |
| **To:** | Meredith Holly |
| **Cc:** | John Holly; Bo Holly |
| **Subject:** | RE : RE : Travel Document - New York 12/22/06--URGENT!!!!!! |

Meridith, John and BO,

THIS CANNOT BE. Alexandre cannot return the 16th of January!!!!!!! **He cannot miss 2 weeks of school!!**

THE LATEST HE CAN COME BACK IS JANUARY 6TH. I WAS TOLD THAT JOAN AND THE CHILDREN WERE RETURNING THE 6TH WHICH IS WHY I TOLD YOU TO BOOK ME FOR THE 6TH. WHY IN THE WORLD WOULD I COME BACK THE 6TH WITHOUT MY FAMILY??????

This must be CHANGED TODAY to a return no later than the 6th. Otherwise it is not dooable.

I WILL CALL YOU.

-------- Message d'origine--------
De: Meredith Holly [mailto:miaregina@gmail.com]
Date: jeu. 21/12/2006 00:25
À: Philip L. Guarino
Cc: John Holly; Bo Holly
Objet: Re: RE : Travel Document - New York 12/22/06

Sorry- we haven't been able to check emails until now.

### Nice, France (NCE) to New York-Kennedy, NY (JFK)   Total Travel Time: 8hrs 5

Please check in at Delta Air Lines ticket counter. For your boarding pass, use reference code B5738F   for online or airport check-in.

| **Fri, Dec 22** | **10:40 AM** to **01:35 PM** | Nice, France (NCE) to New York-Kennedy, NY (JFK) 8hrs 55min - nonstop | ▲ | Delta Air Lines Flight 8: Boeing 767 Jet- Econom |
|---|---|---|---|---|

>Extras
Requested Seats 27E, 27C, 27D

### New York-Kennedy, NY (JFK) to Nice, France (NCE) Total Travel Time: 12hrs 4

Please check in at AIR FRANCE ticket counter.

| **Mon, Jan 15** | **07:20 PM** to **08:45 AM** Arrive next day | New York-Kennedy, NY (JFK) to Paris de Gaulle, France (CDG) 7hrs 25min - nonstop | ▲ | Delta Air Lines Flight 8: Boeing 777 Jet- Econom Operated by AIR FRAN |
|---|---|---|---|---|

>Extras
Requested Seats 27A, 27B, 27C

1/4/2007

Exh . I.

**Philip L. Guarino**

| | | |
|---|---|---|
| **De:** | Meredith Holly [miaregina@gmail.com] | **Date:**jeu. 21/12/2006 00:25 |
| **À:** | Philip L. Guarino | |
| **Cc:** | John Holly; Bo Holly | |
| **Objet:** | Re: RE : Travel Document - New York 12/22/06 | |

**Pièces jointes :**

Sorry- we haven't been able to check emails until now.

## Nice, France (NCE) to New York-Kennedy, NY (JFK)

*B5738F*

Please check in at Delta Air Lines ticket counter.  For your boarding pass, use reference code B573

| **Fri, Dec 22** | **10:40 AM** to **01:35 PM** | · | Nice, France (NCE) to New York-Kennedy, N 8hrs 55min - nonstop |
|---|---|---|---|

>Extras
Requested Seats 27E, 27C, 27D

## New York-Kennedy, NY (JFK) to Nice, France (NCE)

Please check in at AIR FRANCE ticket counter.

| **Mon, Jan 15** | **07:20 PM** to **08:45 AM** Arrive next day | | New York-Kennedy, ] Paris de Gaulle, Franc 7hrs 25min - nonstop |
|---|---|---|---|

>Extras
Requested Seats 27A, 27B, 27C

**Stop - Change planes in Paris de Gaulle, France (CDG)**
Connection Time: 3 hrs 50 min

| **Tue, Jan 16** | **12:35 PM** to **02:05 PM** | · | Paris de Gaulle, France Nice, France (NCE) 1hr 30min - nonstop |
|---|---|---|---|

>Extras
Requested Seats

## Passenger Information

### Passenger Name †

Joan Guarino

Alexandre Guarino

Gabriella Guarino

† Passenger name on the reservation must match your government issued photo ID
†† Ticket number is a number assigned by the airline to your e-ticket

On 12/20/06, **Philip L. Guarino** <pguarino@phillipsnizer.com> wrote: